TAGGED OPINION

**ORDERED in the Southern District of Florida on May 17, 2007.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CASE NO.: 06-12096-BKC-PGH |
| Russell Kingsley and Gretchen Kingsley,<br>    Debtors._____/ | CHAPTER 7 |
| Michael R. Bakst, Trustee<br>    Plaintiff, | ADV. NO.: 06-2109-BKC-PGH-A |
| v. | |
| Phillip R. Wetzel,<br>    Defendant._____/ | |

**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PARTIALLY GRANTING AND PARTIALLY DENYING TRUSTEE'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** came before the Court on February 12, 2007, upon Phillip R. Wetzel's ("Defendant") *Motion for Summary Judgment*

1

("Motion"). On March 9, 2007, Michael R. Bakst ("Trustee") filed a *Cross-Motion for Summary Judgment Against Defendant Phillip R. Wetzel* ("Cross-Motion"). On March 21, 2007, the parties filed a *Joint Stipulation of Facts on Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment* ("Joint Stipulation").

## BACKGROUND

On May 23, 2006, Russell Kingsley and Gretchen Kingsley (collectively, "Debtors") filed a chapter 7 bankruptcy petition.[1] The Defendant is the father of Gretchen Kingsley.

On April 14, 2006, the Debtors received, by direct deposit to their checking account, a tax refund in the amount of $4,931.00. On April 15, 2006, the Debtors withdrew $400.00 and then issued a check in the amount of $4,516.00 to the Defendant (the "Transfer"). No consideration was provided by the Defendant to the Debtors in exchange for the Transfer. The Debtors sent the Transfer to the Defendant because they were fearful that Bank of America would seize the funds in their Bank of America checking account to satisfy the balance on their Bank of America credit card. At the time of the Transfer, the Debtors had incurred debts beyond their ability to pay as they became due and the Defendant was aware that

---

[1] All facts are taken from the Joint Stipulation unless otherwise noted.

2

the Debtors had met with bankruptcy counsel and decided to file bankruptcy.

The attachments to the Defendant's affidavit ("Affidavit") show and that the Defendant used the Transfer to make the following prepetition payments to the Debtors and the Debtors' creditors:

| DATE    | RECIPIENT                     | AMOUNT     |
|---------|-------------------------------|-----------:|
| 4/15/06 | Tax return filing fee[2]      | $16.00     |
| 4/24/06 | Gretchen Kingsley             | $500.00    |
| 4/24/06 | Gretchen Kingsley             | $1,500.00  |
| 5/3/06  | Ocwen Loan Servicing[3]       | $1,584.84  |
| 5/3/06  | Brian McMahon[4]              | $200.00    |
| 5/5/06  | Russell Kingsley              | $500.00    |

Thus, the Affidavit indicates that all but $215.16 of the Transfer was paid to the Debtors and the Debtors' creditors prior to their bankruptcy filing. The remaining $215.16 of the Transfer was paid to the Debtors or the Debtors' creditors postpetition.

On December 5, 2006, the Trustee filed a four-count *Complaint to Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. §*

---

[2] Although the attachments to the Affidavit do not identify that the tax return filing fee was paid on the Debtors' behalf, the Joint Stipulation states that all amounts transferred by the Defendant prepetition were paid to the Debtors.

[3] Ocwen Loan Servicing is the Debtors' mortgagee.

[4] Brian McMahon is the Debtors' bankruptcy attorney.

3

548, and § 726, *Florida Statutes* ("Complaint").[5]

The Motion argues that the fraudulent transfer was reversed by virtue of the Defendant using the Transfer to make payments to the Debtors and their creditors, and therefore no cause of action exists. The Cross-Motion asserts that all the requirements for a fraudulent transfer exist as to each count of the Complaint and that judgment should be entered against the Defendant as a matter of law.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(E) and (H).

### A. *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that Summary Judgment is appropriate if the Court determines that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[5] Counts II-IV of the Complaint seek avoidance under state law pursuant to 11 U.S.C. § 544(b)(1), which provides that: "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim..." 11 U.S.C. § 544(b)(1).

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "In determining whether a genuine question of material fact exists, the Court must consider all evidence in the light most favorable to the non-movant." *Pilkington v. United Airlines, Inc.*, 921 F. Supp 740, 744 (M.D. Fla. 1996). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987) (*citing Anderson*, 477 U.S. at 248). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. . . . If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Herzog v. Castle Rock Entertainment*, 193 F. 3d 1241, 1246 (11th Cir. 1999).

The material facts of this matter are not in dispute and entry of summary judgment is appropriate. As discussed below, the Court finds that the Trustee is entitled to recover only those funds that were not repaid to the Debtors or for the benefit of the Debtors prior to the filing of their bankruptcy petition.

**B.   *Avoidance of Fraudulent Transfers Under 11 U.S.C. § 548 and Florida Law***

Under 11 U.S.C. § 548(a)(1)(A) and Fla. Stat. § 726.105(1)(a), a trustee may avoid a transfer of a debtor's property if the transfer was made with the actual intent to hinder, delay, or defraud the debtor's creditors.[6] *Kapila v. WLN Family Ltd. P'ship (In re Leneve)*, 341 B.R. 53, 55-56 (Bankr. S.D. Fla. 2006). The trustee may also avoid a transfer as constructively fraudulent if the debtor received less than reasonably equivalent value in exchange for the transfer and the debtor was insolvent[7] at the time of the transfer or became insolvent as a result of the transfer. (Fla. Stat. §§ 726.101-112 hereafter referred to as "UFTA"). Fla. Stat. § 726.106(1).

---

[6] Florida enacted the Uniform Fraudulent Transfer Act as reflected in Fla. Stat. §§ 726.101-112. The Court analyzes together the application of § 548(a)(1) and Fla. Stat. § 726.105(1)(a) since the provisions are "nearly identical". *Feltman v. Warmus (In re Am. Way Serv. Corp.)*, 229 B.R. 496, 529-530 (Bankr. S.D. Fla. 1999).

[7] Under Fla. Stat. § 726.103(2), insolvency is presumed for a debtor who is generally not paying his or her debts as they become due.

6

In this case, both actual and constructive fraud are present. The parties agree that the Transfer was made to prevent Bank of America seizing the funds in the Debtors' checking account to satisfy the Debtors' credit card debt. The Transfer is also constructively fraudulent because: 1) the Debtors received no consideration in exchange for the Transfer; and 2) the Debtors had incurred debts beyond their ability to pay as they became due.

The Defendant argues that by repaying funds to the Debtors and the Debtors' creditors, the fraudulent transfer was "corrected." Neither party has presented case law on this point. The Court is also unaware of any section 548 case law that addresses the effect of repayment of a fraudulent transfer. However, there are several cases considering the effect of repayment of a fraudulent transfer in the context of an objection to discharge pursuant to 11 U.S.C. § 727(a)(2).[8] In *Davis v. Davis (In re Davis)*, 911 F.2d 560 (11th Cir. 1990), the debtor reversed a fraudulent transfer of real property to his wife the day before he filed for bankruptcy. *Id.* at 560-561. The debtor was subsequently denied his discharge pursuant to 11 U.S.C. §727(a)(2). *Id.* at 561. On appeal, the debtor argued that "transferred" should be read as "transferred and

---

[8] Given the facts of this case, the Trustee might have considered filing a more appropriate action objecting to Debtors' discharge pursuant to § 727(a)(2). See e.g., *Davis*, 911 F.2d F.2d 560 (11th Cir. 1990); *Martin v. Bajgar*, 104 F.3d 495 (1st Cir. 1997); *Imperial Millwork, Inc., v. Steinberg (In re Steinberg)*, 4 B.R. 593 (Bankr. D. Mass 1980).

7

remained transferred." *Id.* at 562. The Eleventh Circuit affirmed denial of the debtor's discharge by relying upon the plain meaning of the statute, stating that:

> Congress certainly was capable of drafting a statute which would deny a discharge only when assets were fraudulently transferred and remained transferred at the time of filing of bankruptcy proceedings, but it did not. We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face."

*Id.*

A Seventh Circuit opinion interpreting state fraudulent transfer law reinforces the conclusion reached in *Davis*. In *Nostalgia Network, Inc. v. Lockwood,* 315 F.3d 717 (7th Cir. 2002), the Seventh Circuit noted that "the fact that some or for that matter all of [a fraudulent transfer] may have seeped back to the debtor does not legitimize the transfer." *Id.* at 720. In *Lockwood*, the district court entered summary judgment against a transferee who used a significant portion of a fraudulent transfer to pay the debtor-transferor's personal and business expenses. *Id.* at 718-719. On appeal, the transferee argued that she actually had benefitted the creditors by using the transfer to pay the debtor-transferor's expenses. *Id.* at 719. The *Lockwood* court rejected the argument, finding that the inquiry should stop at the first stage of the analysis. *Id.* at 720. Given the facts of *Lockwood*, the absence of consideration was all the Seventh Circuit required to establish the existence of the fraudulent transfer. *Id.*

8

The Court finds that there is no exception for repayment of a fraudulent transfer under 11 U.S.C. § 548 or Florida Statutes § 725.105 and 726.106. Thus, the Transfer from the Debtors to the Defendant was fraudulent within the meaning of 11 U.S.C. § 548(a)(1)(A), Florida Statutes §726.105(1)(a) and § 726.106(1) and therefore the Transfer is subject to avoidance by the Trustee.

**C.   *Recovery Under 11 U.S.C. § 550 and UFTA***

***1.  Prepetition Repayment***

Although the avoidance of a transfer is necessary in order to recover from a transferee, avoidance does not automatically translate into recovery. *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003)(discussing the distinct concepts of avoidance and recovery). Section 550 (a) permits a trustee to recover for the benefit of the estate, specified avoided transfers from a transferee. The purpose of § 550 is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *Feltman v. Warmus (In re Am. Way Serv. Corp.)*, 229 B.R. 496, 530-531 (Bankr. S.D. Fla. 1999)(citations omitted). Nevertheless, a trustee's section 550(a) recovery is limited to a single satisfaction by section 550(d). 11 U.S.C. § 550(d). While section 550(d) is typically implicated in situations where a trustee seeks recovery from multiple parties, this provision has also been used to "prohibit a trustee from recovering under [s]ection 550(a) from a transferee that has already returned to the

estate that which was taken in violation of the Code." *Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.)*, 312 B.R. 262, 271 (D. N.J. 2004).

The Court previously explored this application of the single satisfaction rule in *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348 (Bankr. S.D. Fla. 2007). *Sawran* involved a subsequent transferee who partially repaid a preferential transfer to the debtor prepetition. *Id.* at 350-351. In *Sawran*, the Court ruled that the trustee could not recover prepetition repayments based upon: 1) the single satisfaction rule of section 550(d); and 2) the Court's equitable powers pursuant to section 105(a). *Id.* at 354.

The Trustee argues that *Sawran* is distinguishable from this case because *Sawran* made an explicit finding that the subsequent transferee was innocent of wrongdoing. The Trustee argues that unlike *Sawran*, the Defendant here admittedly participated in a scheme to hinder creditors of the Debtors.

The Court agrees that the equitable considerations underlying *Sawran* are absent here. However, the issue of windfall to the estate remains. The Trustee possesses the power to avoid fraudulent transfers in order to prevent the depletion of the estate, to promote an equitable distribution of the debtor's assets, and to protect creditors who advanced credit in ignorance of the fraud. *See Dzikowski v. Northern Trust Bank of Florida, N.A. (In re Prudential of Florida Leasing, Inc.)*, 478 F.3d 1291, 1299 (11th

10

Cir. 2007)(citations omitted). However, to the extent that the fraudulent transfer is repaid prepetition, the claim is satisfied. *Cf. Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1201 n.7 (10th Cir. 2002)(noting that the return of property that would in the first instance be a preferential transfer extinguishes the cause of action).

This principle was examined in the context of a fraudulent transfer in *Belford v. Cantavero (In re Bassett)*, 221 B.R. 49 (Bankr. D. Conn. 1998), wherein the trustee sought to avoid a transfer of real property from a subsequent transferee. *Id.* at 49-50. The *Bassett* court determined that the only voidable transfer was the debtor's transfer of a contingent equitable lien in the real property. *Id.* at 55. However, the subsequent transferee refinanced the property which had the effect of eliminating the debtor's liability on a promissory note. *Id.* The *Bassett* court held that the refinance shielded both the subsequent and initial transferee from liability based on: 1) satisfaction of the debt; and 2) the single satisfaction rule of section 550(d). *Id.* The court reasoned that any recovery from the subsequent transferee would have been a windfall to the bankruptcy estate since the debtor's liability had been extinguished prepetition by the refinance. Similarly in this case, the bankruptcy estate would receive a windfall if the Court permitted Trustee to recover Defendant's prepetition repayments of the Transfer. Consequently,

the Court finds that the Trustee's right to recover under section 550(a)(1) is satisfied to the extent of Defendant's prepetition repayments to the Debtors and Debtors' creditors.

Finally, the Trustee argues that unlike the Bankruptcy Code, the UFTA does not distinguish between avoidance and recovery. The Court does not agree. Florida's UFTA provides that "a creditor may recover judgment for the value of the asset transferred." Fla. Stat. § 726.109(2).

In other state versions of UFTA, the full repayment of a fraudulent transfer to the transferor has been sufficient to absolve the transferee of liability. *See, e.g., Northborough v. Risley*, 424 N.E.2d 522 (Mass. 1981); *Robinson v. Coughlin*, 830 A.2d 1114 (Conn. 2003). In *Northborough*, the Massachusetts Supreme Judicial Court held that even though the transferee knew the transfer was made with actual fraudulent intent, the transferee's liability was absolved by reconveyance to the transferor of proceeds from the sale of the fraudulently transferred real property. *Northborough*, 424 N.E.2d at 522-523. The court noted that the transferee sought and received no benefit from the transactions. *Id.* at 523. Similarly in *Robinson*, a creditor was denied damages against the transferee because the fraudulent transfer was reconveyed to the transferor with no depreciation in the value of the property. *Robinson*, 830 A.2d at 1120-1121. The Connecticut Supreme Court determined that avoidance was not an

12

available remedy because once the assets were reconveyed "there was, effectively, no transfer to avoid." *Id.* at 1120. The court noted that the lack of recovery against the transferee was not contrary to the protections afforded by UFTA. *Id.* The court explained that UFTA is "largely an adoption and clarification of the common law of fraudulent conveyances. . . [and that] a damages award against a fraudulent transferee is generally appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds of that disposition." *Id.* at 1119 (citations omitted).

While Florida's UFTA permits creditor recovery for the value of the asset transferred, the amount of the judgment is "subject to adjustment as the equities may require." Fla. Stat. §726.109(3). Other states that have adopted UFTA have construed the equitable adjustment provision to prevent windfalls to the bankruptcy estate when a transferee partially repays a fraudulent transfer. *See Dahar v. Jackson (In re Jackson)*, 318 B.R. 5, 27 (Bankr. D. N.H. 2004), *aff'd*, 459 F.3d 117 (1st Cir. 2006). In *Dahar*, the debtor transferred parcels of real property to his wife, who served as the trustee of two family trusts created for estate planning purposes. *Id.* at 10. The transferee wife sold the real property and used some of the proceeds to pay the debtor's bills and family expenses. *Id.* at 11, 21-22. The *Dahar* court found that the transfer was constructively fraudulent under UFTA. *Id.* at 22. However the

13

transferee wife was entitled to an equitable adjustment equal to the amount of proceeds she had used to pay the debtor's bills and family expenses. *Id.* at 51. The *Dahar* court noted that this adjustment was made, in part, because there was no finding of actual fraud. *Id.* Given the facts of this case, the Court finds that despite the existence of actual fraud, the Defendant's fraudulent transfer liability is subject to an adjustment pursuant to Florida Statutes § 726.109(3) for prepetition repayments the Defendant made to, or on behalf of, the Debtors.

The Court finds that under both 11 U.S.C. § 550(d) and Fla. Stat. § 726.109(3), the Trustee may not recover sums that were repaid to the Debtors or to the creditors on the Debtors' behalf prepetition. Under these facts, avoidance and recovery would result in a windfall to the estate not contemplated by the Code or UFTA. Therefore, the Court will grant the Motion for repayments made prepetition to the Debtors and their creditors. The Court will also grant the Cross-Motion's request to avoid the Transfer, but will reduce the Trustee's recovery by the sum repaid prepetition to the Debtors and their creditors by the Defendant.

### 2. *Postpetition Repayment*

The Court's conclusion that the fraudulent transfer was satisfied by the Defendant's prepetition repayments does not apply to postpetition repayments. Because assets acquired postpetition by a Chapter 7 debtor generally do not become property of the estate,

14

the proper recipient of a postpetition repayment is the bankruptcy estate, not the debtor. See In re Beshears, 182 B.R. 235, 238 (Bankr. E.D. Ark. 1995). Consequently, the Court will deny the Motion for repayments made postpetition. The Court will grant the Cross-Motion to avoid the Transfer and recover the amounts Defendant paid postpetition to or for the benefit of the Debtors.

### 3. Final Judgment on section 548(a)(1)(B) and Count III is Appropriate

The Court notes that Count I of the Complaint seeks avoidance pursuant to both 11 U.S.C. § 548(a)(1)(A) and (B). However, the Cross-Motion seeks summary judgment based solely upon section 548(a)(1)(A). Additionally, Count III of the Complaint seeks avoidance pursuant to Florida Statute § 726.105(1)(b), which provides that a transfer is fraudulent if less than reasonably equivalent value was received and if the debtor was: 1) engaged or about to engage in a business or transaction for which the remaining assets of the debtor are unreasonably small in relation to the business or transaction; or 2) the debtor intended to incur or believed that he would incur debts beyond his ability to pay. Fla. Stat. § 726.105(1)(b). However, the parties stipulated that at the time of the Transfer, the Debtors had *already* incurred debts beyond their ability to pay. The parties did not stipulate to the Debtors' intent to incur future debts. Were the Court to consider the section 548(a)(1)(B) claim as included in the Cross-Motion and the requirements for Florida Statute § 726.105(1)(b) as properly

stipulated to, the Trustee's recovery would be limited by the same principles discussed in Section C of this Order.

In addition, the Motion asks for the Court to absolve the Defendant of liability because he repaid the Transfer to the Debtors, and is applicable against each count of the Complaint. The Court has granted the Motion for those amounts that were repaid prepetition to the Debtors and their creditors, and denied the Motion for amounts repaid postpetition. Thus, the entry of summary judgment also adjudicates the section 548(a)(1)(B) and Florida Statute § 726.105(1)(b) claims. Therefore, the Court will enter final judgment in favor of the Trustee for the amount of the Transfer, reduced by the sum of the Defendant's prepetition repayments to or for the benefit of the Debtors.

## CONCLUSION

The facts of this matter are not disputed. The Court finds that the Transfer to the Defendant was a fraudulent transfer under 11 U.S.C. § 548 and UFTA. However, the Trustee's recovery will be reduced by the amount of Defendant's prepetition repayments to the Debtors and their creditors. The Court will enter a separate final judgment pursuant to Federal Rule of Bankruptcy Procedure 9021 in the Trustee's favor for the postpetition transfers made by Defendant Phillip Wetzel.

## ORDER

The Court having considered the submissions of the parties and being otherwise fully advised in the premises hereby:

**ORDERS AND ADJUDGES:**

1. The Defendant's Motion is **PARTIALLY GRANTED AND PARTIALLY DENIED**.

2. The Plaintiff's Cross-Motion is **PARTIALLY GRANTED AND PARTIALLY DENIED**.

3. The Trustee shall recover from Defendant Phillip R. Wetzel, the principal amount of $215.16, costs in the amount of $443.00, the total of which shall accrue post-judgment interest at the statutory rate prescribed by law.

###

Copies Furnished To:

Michael R. Bakst, Esq.
Brian K McMahon, Esq.
AUST

Plaintiff's counsel is directed to serve a copy of this Order on all interested parties not listed above.